We welcome you to the Fifth Circuit during Jazz Fest week. Unfortunately, many of us don't have time to go to the Jazz Fest. We don't have the right attire either, which one of my colleagues called. He said, if you go out to Jazz Fest, you need to have disposable clothes. So, aside from all that, please adhere to our time clock and schedule the yellow light. I know you're familiar with this. Yellow light means you have two more minutes. When the red light comes on, we ask you to conclude your argument as soon as possible, unless you're answering a question from the court. We are familiar with the briefs and record excerpts. We normally have not read the entire record, so we appreciate those citations. We'll call the first case, Dobbin Plantersville Water Supply v. Montgomery County Municipal Utility District No. 180, Case No. 25-20168. Hearing first, Mr. Allensworth. Has the Texas Court of Appeals ruled on your challenge to the PUC denial of the removal of the CCN? Not yet, Your Honor. We're actually not at the Austin Court of Appeals yet. We're in Travis County District Court. So, you have to do an initial appeal to Travis County District Court, and then you go up to the Austin Court of Appeals. So, did you voluntarily abate that, or did the court abate it? No, we're pending. We're going to have a hearing on that, I believe, next month. So, that's been pending four years? Yes, that one has. All righty. I think that's right. I think four years is right. All right. And you've raised preemption issues in that case? No. No? No. We've reserved our federal rights for federal courts. We haven't raised the 1926B issues in the state proceeding. Why wouldn't you raise them in both? I'm just curious. I did not want to waive our right to be heard in federal court by proceeding in state court and seeking a federal remedy. Instead, we wanted to make an England versus Louisiana State Board of Reservations so that we could make sure that our federal rights were adjudicable in federal court, not state court.  May it please the court. So, I think that your honors are very familiar with these types of cases. 1926B cases can be very complex, but the issue before the court is relatively narrow. MUD 180, the competing provider, filed a motion to dismiss under federal rules, so Procedure 12C, a pleading deficiency in 12B1 based on lack of jurisdiction, and the trial court ruled in favor of MUD 180 on the jurisdictional issue, finding that there was no redressable injury for Dobbin, who is my client, the appellant, given that a decertification had already occurred. So, in other words, because it's a fait accompli. Once a decertification occurs, the district court held that we no longer had a legal right to serve, and since the Green Valley test has that as an element, the court ultimately dismissed. We think that's error. We think that puts a merits issue and turns it into a jurisdictional issue. From our perspective, Dobbin does have the legal right to serve. Since we are here on 12B1, our pleadings are taken as true, assumed to be true, and we have pleaded that we have the legal right to serve, that the decertification is ineffective to deprive Dobbin of its legal right to serve, because that's what 1926B says. Dobbin 1 addressed Dobbin's rights against the Public Utility Commission of Texas. We heard your honor in that case, and we understood that since there's nothing for the PUCT to do post-decertification, there's simply no injury that we can have redressed by seeking an injunction or any other relief from the PUCT. Contra here, there's a competing provider in our territory. We're seeking an injunction and damages against that competing provider for serving customers that are within our federally protected territory. And so as a result, here we do have a redressable injury in the sense that we can get paid damages, and if we can prohibit the competing provider by way of a federal order from serving, then we also would actually get some additional state law rights to serve under the Water Code. Are they serving now? They are serving right now. And so we're seeking to enjoin them from doing that moving forward. To get in front of it, I want to make it clear, the goal here is not to prevent them from serving customers until Dobbin has had a chance to plug in its infrastructure. We're not trying to deprive customers of any water. It's not uncommon for territorial competitors in Texas to work through in an organized way the transfer of water service from one provider to the other, and Dobbin's not seeking anything more than that. And certainly in any injunction we would seek before the district court, we would preserve the ability of that entity to continue to serve until such time as Dobbin can just plug its system in and take over that service. Of course, Dobbin had nothing to do with building that system. SIG Magnolia contracted with someone else to do it, right? That's correct. That's correct, Your Honor. So would you be assuming the debt for that? And what would the Fed say about that? No, we would not be assuming the debt for that. So right now SIG is due a lease to own with a different entity. We would be taking over the infrastructure on a constructive trust, and then the MUD would tax the citizenry to pay the developer back for their costs. That would continue even if we take over the system. That's just a financing vehicle, and that's how developers, it's not uncommon for them to pay for water infrastructure in that way. It's also not uncommon for them to do that, use the MUD. They can get paid back if we're just a water provider. There's nothing unusual that happens. Again, it's of never mind to the indebted borrower how the developer wants to finance. What I don't understand about this lawsuit, though, is if you pursued your state court suit and you prevailed, then you will have the right under state law to continue to serve this area. But you haven't pursued it, and you do not have the right, and therein lies the problem with standing, as Judge Rosenthal saw it. Yes, I'm glad you asked that, Your Honor. We don't think, my position, Dobbin's position, is pursuing our federal rights in state court is not a remedy for the reason that 132541 is structured in a way that's guaranteed to make sure we would lose the federal issue even if we raised it there. That's not, I don't think that's the case, because when they take away a CCN, can't they require that reimbursement be made for whatever investments the utility district has made in that particular area? Yes, Your Honor. They are allowed to, there is a But of course you had made no investments at that time. That's right. And so we would eventually get zero dollars, and we would lose the territory, which is what's ultimately valuable to Dobbin. customers within that territory is what we're trying to secure, and it is what the loan is collateralized for with effects. In addition, I can't, on the one hand, argue in court that 13.2541 is preempted, and then simultaneously seek relief through 132541's compensation. If you don't have standing, we don't get to 13. Right. So let's talk about what Judge Rosenthal decided. Okay. Well, from our perspective, Judge Rosenthal's decision was, you don't have a legal right to serve, and so you're out. We've pleaded that 1926B would prohibit the effect of the decertification. No, she didn't say that. What I think, maybe I'm wrong, but I thought the gravamone of what she said was that you can gain no redressability from MUD 180. Yeah, and I disagree with that holding, Your Honor. If we prevail in this lawsuit, we would get damages from MUD 180. In addition, we would get access to their facilities, constructive trust over their facilities, and we would get an order making clear that the act of the decertification does not allow MUD 180 to serve, but does allow us to serve. What's your cause of action against MUD 180? 1983, Your Honor. Based on what? Violation of 1926B, encroachment into a federally protected territory. Well, that was decided. I mean, they're not encroaching. We disagree, Your Honor. From our perspective, we've pleaded that they're encroaching. Let me back up. Please. Because I was reading Dobbin 1. Did you all seek a preliminary injunction to enjoin the PUC from going forward? That's correct. And that was denied by the district court? Well, let me clarify, Judge Richmond. We sought the preliminary injunction post-decertification. That's my question. Did you seek an injunction pre-certification to keep the PUC from terminating your public seat? No. Your Honor, we did not. Relying on Green Valley, which held that you could seek prospective injunctive relief against the PUCT post-decertification, we did not seek the preliminary injunction pre-decertification. As a result, in Dobbin 1, this court found that it was a fait accompli, at least with respect to the PUCT. There was no longer any relief to get from them. We disagree that that applies. But you did not seek a preliminary injunction against the PUC to keep them from decertifying them first? We did seek a preliminary injunction that was post-decertification. The trial court denied our preliminary injunction, and ultimately in Dobbin 1. I'm just saying you did not seek pre-certification? That's right. All right. That's all I'm asking. Yes, we did not seek a preliminary injunction. From our perspective, Green Valley was very clear. That was an argument that the PUCT raised in Green Valley specifically. They said the decertification had already happened, and so what prospective injunctive relief could Green Valley seek against either the Public Utility Commission of Texas or the city of Schertz, who is a competing provider in that case? That's important, because that does distinguish Green Valley from Dobbin 1. Green Valley involved preliminary injunctive relief against a competing provider, and on a 12B1 or 12B6 basis, the Fifth Circuit en banc already blessed that relief post-decertification. That's the same relief we're seeking here, post-decertification prospective injunctive relief against MUD 180, declaratory relief that 1325.01 is preempted, and declaratory relief that the decertification has no effect on Dobbin's legal right to serve under 1926B. No, even if you're right, why shouldn't we withhold our decision until the state court rules? Well, that would be an abstention issue, and they did raise Burford and Pullman abstention at the trial court. I don't believe that's been raised on a cross-court. Why didn't you press the state court? I don't understand that period. Yeah, so I can tell you what I think happened, and you'd have to ask counsel. It's not what you think happened. You're the ones who have filed four lawsuits. We did request the abatement, and we got the PUCT and the competing landowner to agree to that abatement. The notion would be deciding the issues here would be more judicially efficient because if there was preemption, there would be no reason to worry about what that happened. In addition, from our perspective, since we're contending that 132541 is preempted in its entirety, it's more efficient to have this proceeding. Yes, but normally we don't need to address these kinds of issues if the state court has provided a remedy. Well, in this case, we don't think the state court has provided a remedy. It hasn't done anything, so we don't know, do we? Well, I guess that highlights the conflict between 132541 and 1926B. Federal regulations do not allow the state of Texas to allocate any property. Well, that's an issue that's still to be determined. That's right. And let me ask you, when you borrowed this money from the federal government, just what is the scope of service that Dobbin provides? It's water service. I understand that, but is it to ranch owners? Are there some small towns? What is it? Yeah, so Dobbin is a rural water provider. It's got customers in Montgomery and Grimes County, Texas. Dobbin is an unincorporated township, population 300. Montgomery is the biggest city around. I think it's around 3,000 people. Dobbin's customers are primarily rural with some subdivisions that have come in as there's been growth in the area. So at the time of decertification, for context, they had about 1,800 meters. This development is about 1,500 at full build-out, about 550 at phase one. So as of today, Dobbin has 2,900 meters. So they're growing because you're getting a lot of growth from Conroe and west of Houston. Well, let me – I mean, I don't want to – you argue whatever you want to argue, and if you want to make your argument before I ask this question, but what's been bugging me is the government lent X amount of money, sort of like bonds, on the continued water service provided by Dobbin. The government's expectation as a lender was not on a presumption that Dobbin was going to be able to have a bunch more service because Harris County is, you know, the people of Houston are expanding out into Montgomery and Grimes County. So the government is protected financially through the service that you provide and the growth that you've experienced. Yes, you are. Absolutely. So you're trying to use the government to create a monopoly opposed to Texas law. I would say Congress created a monopoly. No, that's the issue that if we were ever to reach it in a proper way, it might be decided. Well, Your Honor, as you made the point in the City of Madison versus Bear case, it was literally Congress and not this court that prescribed encroachment into the federally protected territory during the term of the loan. That was the precise argument that the City of Madison had made, if you'll recall, is that they had said, look, we're taking this tiny sliver of land from them. It doesn't threaten their loan at all. It doesn't have anything to do with anything. And as you pointed out to them, it doesn't matter, because Congress said no encroachment at all. The notion being that since we've pledged our future revenues and our future service territory to the feds, they will be more protected the more protection that Dobbin has. And that's their interest. The feds don't care about whether MUD 180 serves it or we serve it. They just care about getting paid back. Well, actually, they do care about getting paid back, and this whole program started in the 1930s to provide water to distinctly underserved areas. So allowing these so-called rural providers essentially to become suburban providers is just a different thing. It might be, Your Honor, but I think that would be an argument you're going to have to direct to Congress, because I think right now we're bound by what the statute says, 1926b. I think it's fairly clear about what it's intended to protect, and every court, including the Fifth Circuit, that has addressed it is treated as a categorical protection. What's your best case that's actually held in this kind of procedural posture that a federal court should step in? Green Valley, Your Honor. I would say City of Madison as well, but Green Valley. Yeah, but you're asking for retrospective relief. We're allowed to against MUD 180, Your Honor. This isn't an ex parte case. Excuse me, I'm out of time, Your Honors, and so I'll reserve the remaining five for argument unless you have anything else for me. Okay, thank you. Thank you, Your Honors. Appreciate it. Thank you. May it please the Court, my opposing counsel. Your Honors, I am Gunnar Sequist. I am here on behalf of the Montgomery County Municipal Utility District 180. While it's still on the Court's mind, I do want to address the distinction, and it's a very clear one, between the Madison versus Bear Creek and where we are today. And in particular, if you'll recall from Madison, what the city was doing in that case was condemning actual customers and actual infrastructure that the protected water utility in that case owned. This is a very different circumstance in that Taubman never had any infrastructure as it relates to these particular issues. That's why the state regulatory body decertified them as a result. Let's assume, just for the sake of argument, that we think the State Public Utility Commission was wrong and that it is preempted. So procedurally, where does that leave us? Well, and that gets us back to where what Dobbin told us in Dobbin 1 was that because of the PUC's order, that order eliminated Dobbin's right to serve SIG and Redbird's developments and to exclude others from doing so. That is why Judge Rosenthal was correct in dismissing this case for lack of a protected injury under the law, but also one that is traceable to and redressable against MUD 180. In terms to answer your question more directly, if the state's order is not valid, that has to be decided against the state. The appellant in this case lost that opportunity when it failed to timely move for a preliminary injunction. And just so we are clear on what that timeframe was, recall that they filed their lawsuit in July of 2021. The PUC didn't issue its decertification order until January of 2022. The appellant in this case didn't actually go on to seek injunctive relief until October of 2022. So there was ample opportunity to challenge that state order before we got here today. And they can challenge it in state court. That's exactly right, Your Honor. And I would just note for the record that, as noted in Dobbin 1, the state court appeal was voluntarily abated pending the federal court. It only got reinstated after the Dobbin case came out and not long after the dismissal order from Judge Rosenthal. So now we're full steam ahead back in the state court. But as this court noted, you're absolutely correct that the state court is perfectly capable of adjudicating the preemption questions and any 1926B issues. But it hasn't been raised. It hasn't been presented. So that, again, and I understand my colleague's argument about trying to split hairs between one or the other, but certainly Dobbin could have, in this case, raised the 1926B issues and be having that litigated at the state court as we speak. They didn't do so. But when it comes to this case, the reason they lack standing is since January of 2022, Dobbin has not had the right or the legal ability under state law to serve our clients. So the issue in this case, to be clear, is not one between should Dobbin have been serving or should Mudd 180 have been serving. I thought they were serving. Mudd 180 has been, Your Honor. But the alternative to that would not have been Dobbin serving. It would have been no service. And if, in fact, we are enjoined from providing service, the result of that is not, as Dobbin would suggest, Dobbin serving, because Dobbin cannot legally serve under Texas law. There would be no one available to provide water service. It would create some habit. So in terms of Dobbin's contention that what they're really after here is they could get damages. Well, the problem with that, Your Honor, is, of course, any injury that they claim has to be traceable to my client, Mudd 180. But their inability to any of the damages that they are claiming stem from their inability to serve under the PUC's order. They didn't lose money because we are serving. They lost money because they cannot serve because they would be certified. And honestly, because they never had the actual physical infrastructure to serve in the first place, they haven't lost a dime. But that's more of a merits issue. But the point being that, in fact, they don't have an injury that is traceable to us. They complain that they are unable to serve. That's not traceable to us either. That's traceable directly to the PUC's order, which wasn't challenged and still isn't being challenged in state court. And so when we are looking at the standing question here, first, they lack the legal right to serve under state law, which is a threshold showing for purposes of stating an injury that's protected under federal law. And the law is clear, and I don't think we have a dispute, Your Honors, that the ability to serve is defined in reference to state law. There is no federal overarching part of Section 1926B that says, you know, that grants the right to provide service within a state. The state still gets to decide who is authorized to serve within its boundaries. So they don't have that provision. Secondly, their injury is not traceable. It's well-settled law that where your injury is, in fact, traceable or the result of the independent action of some third party, not before the court, the element of traceability is missing from your standing analysis. And that's exactly what we have here. The injury that Dobbin is claiming, no matter how it couches it, ultimately relates back to the fact that it has been decertified and it lacks the ability to serve under state law. And ultimately, again, although my colleagues have done a very good job of trying to couch this case as anything other than an attempt to retroactively invalidate the PUC decertification, that's exactly what this case is. What they're asking this court to find is that the PUC's decertification was invalid retroactively. Let me ask you this. Had they brought a lawsuit in the first document action in the federal court, had they sought a pre-decertification preliminary injunction based on preemption grounds, do you agree that they should have prevailed? No, Your Honor. Why? But I do agree that they could have at least had an opportunity for preliminary injunction. Why is this not preempted? It's not preempted for two reasons, Your Honor. One, we know from your sister panel in Crystal Clear Water Supply Corporation, Crystal Clear Special Utility District versus Jackson, that Section 1926B is not a case of express preemption. So we don't have that. So we're looking at the context of conflict preemption. Conflict preemption, the court is to presume that there is not a conflict unless there is an unavoidable one. And in this case, there simply is no unavoidable conflict between Section 1926B and the state law framework. And in fact, Your Honors, the case law that we cite rather extensively in our brief discusses that if you have a case of conflict preemption or an alleged conflict preemption, even then it has to be clear and direct from the legislative intent. We just don't see that in this statute. What this statute does is it identifies two specific forms of municipal encroachment, annexation or the requirement of a private franchise. State regulatory decertification fits neither of those categories. So on its face of the language, we have a situation here where state regulatory actions such as PUC decertification is not the subject of any clear and unambiguous statement of preemption. But even setting aside, even if we assume that Section 1926B, I guess let me just put a point on that, which is that the conclusion from that is that Section 1926B was never intended by Congress to apply to state regulatory bodies in the first place. It was to stop municipal annexation or municipalities exacting a franchise from federally protected water providers. What we have here, state regulatory bodies, were never contemplated under Section 1926B. But even if we assume for purposes of argument that they were, there is no unavoidable or unacceptable conflict between the operation of the provision that's challenged here under the Texas Water Code, that is Section 13.2541, and Section 1926B. In fact, your honors, those provisions operate completely in tandem and in complement to each other. Both of them serve the overall intent of developing water resources. 1926B by providing federal funding for it, but the Texas Water Code by ensuring that the actual individual who holds that CCN or the entity that holds that CCN, that water service area, is able to provide service and is doing so. And if you're not, the state has provided for a mechanism to decertify so that someone can. Well, let me give a hypothetical that would involve a conflict. Let us say that they actually had pipes in the ground, as we've explained it, near where Sigmagnolia was developing, and all they had to do was make an arrangement for the pipes to be connected to the individual houses. So they actually were able to service this development and they were decertified nevertheless. Your honor, in that particular system, and I want to be clear, first of all, that Dobbin's challenge is a facial one. It's not an as-applied challenge as I read it. But to answer your question, if that were the fact circumstance, they would not be eligible for decertification under the state law. Right. And so you wouldn't end up in that situation. And that's why these statutes operate complementary to each other, is because ultimately, although the. . . Well, now, that's not. . . I mean, you could see a situation like that, and that's why the statute also authorizes compensation to the entity that gets decertified, right? Well, and indeed, your honor, the inability to serve is not even a disqualifier for compensation. Even if you're unable to serve, even in Dobbin's circumstance, you're eligible for compensation under section 13.2541. And I think an important thing to note about that, your honor talked about compensation as it relates to investment, and Dobbin has not made any that is correct. But the statute also explicitly provides for the consideration and compensation to pay off federal debt. So Dobbin was in a position where. . . Well, and I read that a little bit differently, because if you read what it says, it's just that the PUC shall not deny based on federal loans by itself. And, of course, the thing about that, what that was a response to is the North Alamo standard, which this court has already rejected. Because under North Alamo, as long as you had one federal debt and two a CCN, you were entitled to monopoly protection under 1926B. And, of course, this court came back and said, no, that's not enough. What you also need is to be able to show the physical capacity available facilities to serve within a reasonable time of request. Well, if you look at 13.2541D, it's wholly consistent with that. It's basically saying it's our state law version of North Alamo is not enough. You also have to show that you're providing water service. What that provision does not say is that. . . You have to. It's not mandatory. Correct, Your Honor. Correct. It just basically says that a water utility like Dobbin can't just show up and slap its loan agreement down and preclude decertification. And that's wholly consistent with the federal statute in Green Valley. Well, getting back to the. . . So what's your bottom line here? She says, again, Judge Rosenthal's opinion, says that the Fifth Circuit previously addressed the issue of the decertification order in Dobbin 1. And the relief, the voiding of a final state agency order is quintessentially retrospective and grants no relief. And then MUD 180 has no power to enforce the decertification order. Does that pretty much summarize your position on. . . I think that sums it up exactly. And I think what Judge Rosenthal's closing point was, which is really my underlying point, is that there is nothing that Judge Rosenthal could have ordered against my client, MUD 180, that would have restored Dobbin's right to provide service. And I heard my colleague say a moment ago, he's hoping for a federal order that would allow them to serve. But that relief is not redressable. The injury is neither traceable to, and the relief is not redressable to MUD 180. The avenues for that relief were, one, pre-decertification before the Western District, and that obviously the door has closed, or two, in the state court appeal case. And unless the court has any further time, excuse me, further questions, I'll yield the remainder of my time. I just have one other brief question. She quotes a case called City of Red Oak versus Department of Agriculture, and that was Western District of Texas in 2021. Whatever happened to that case? Your Honor, I do not know that off the top of my head. I would be happy to look into that and file a letter with the court. I mean, the parties cited it. I think Mr. Allensworth may know. All right, thank you. Thank you, Your Honor. Thank you, Your Honors. I've got a lot to cover, so I'm going to try to talk a little quicker this time. I want to address one thing that's important. Legal right to serve is something that is determined at the time the loan is taken out, not later at a decertification. Since 1926B explicitly prohibits the happening of an event that would require someone like Dobbin to get permission to continue serving an area they previously served, then by our lights, the legal right to serve test must be determined at the time of the loan, not at some subsequent time later. Doing so would vitiate the second half of 1926B and make it ineffective. For the purposes of this appeal, Dobbin has met the Green Valley test and yet has been decertified by the PUCT. That is assumed since we've pleaded that we've met the Green Valley test, that we have sufficient nearby infrastructure to serve. These issues about capacity are not relevant. That's not what we're deciding. I thought it wasn't decided. I thought the court just didn't decide that part. That's right. Since this is a 12B1 jurisdictional case, we're assuming the pleadings are true. We're taking them as true since we have pleaded that we have the nearby infrastructure. For purposes of today, we've met Green Valley, and yet the State of Texas has decertified the area. The appeal state is not an adequate remedy, and that takes some explaining. It's very complicated, but here's why. The State of Texas has created a mechanism to have an expedited release. It does not have a hearing. You do not get to cross-examine witnesses. The PUCT decides it without reference to 1926B. The fact finder in those cases is the PUCT. Supposing in that case I put on evidence that I've got sufficient nearby infrastructure to meet Green Valley. The fact finder is not going to look at that. Suppose in that same case my colleague puts in evidence that I don't. I can't meet it within a reasonable time. That's a contested factual issue. Where does it go? It goes up to the Travis County District Court. On a record that's created at the PUCT. So you can claim denial of due process, right? Wrong, because the Austin Court of Appeals has held that a CCN is not a vested property right substantial enough to give you due process rights. We are challenging that right now, but as of today I don't have a court that says I even have a due process right to assert my federal rights. So from our perspective, even if we – I still, with great respect, I don't understand why you didn't raise preemption all the way up on both sides. Because if I raised it in preemption, the other one we would have gotten abstained, we would have gotten either – So what? You would have had your remedy. But if I also go and take a state remedy and I say give me the federal rights, that undercuts my – If they denied your federal rights you could take it up to the U.S. Supreme Court. Understood. That's it. But from our perspective, if I'm going to make an England reservation to be heard in federal court, I'm allowed to do that. And if I don't do that, then I'm not allowed to be heard in federal court. Looks like it's not working. That's right. That's absolutely right. So I guess you'll get to test the waters in state court after all? Well, no, I won't because I haven't – I'm not raising federal issues in state court, Your Honor. A federal plaintiff is allowed to pick to have their federal remedies heard in federal court and not to subject those to the winds of the U.S. You can go up to the Supreme Court on this one too, maybe? Absolutely. But that's the point, Your Honor, is we get to make that election. The PEC is not even a party to this lawsuit. Your Honor, they don't need to be one. I'm not seeking any relief against PECT. And what's your best authority for that? City of Madison, Green Valley, Post Oak, North Alamo. North Alamo involved a suit against a competing provider. I don't have – all of this court's jurisprudence on this is about me suing a competing provider and saying you have a remedy. North Alamo afforded the constructive trust, et cetera, damages, all of it. It's just a 1983 suit. But there was no PUC involvement in those other cases. Agreed completely. Those were just A versus B and nobody – I'm not even sure what the PUC was doing at the time of those cases other than the Green Valley. Sorry, so Green Valley did involve PUC. And it said you can't get retrospective relief. Against the PUCT. It said it could survive 12 weeks. And what's your best case for saying you can get indirect retrospective relief against a PUC order? Verizon versus Maryland, Your Honor. Well, explain why. Verizon versus Maryland makes it very clear that you can seek declaratory relief against something that's preempted even after the fact. It's Scalia's opinion. He says although a declaratory relief will have a retroactive effect, it doesn't matter, you can still get it. Also says you can get prospective injunctive relief even after the regulatory issue has been resolved. It doesn't matter because as long as you're seeking – But the declaratory relief here would invalidate the PUC order. All I need is a declaration that says MUD 180 cannot rely on a decertification to continue serving in our federally protected territory. But that does not give you the right when you've been decertified. That's not entirely true. We think it does because 1926B would make the – There's a water code provision, 13243. If I can get an order prohibiting him from serving, I am then allowed to serve within a quarter mile around my CCN, which would include some of this development. I don't have to seek full redress in this lawsuit. I just need to seek some release. I just wonder, you probably could have paid off the entire federal loan for the cost of the litigation. I have no idea, Your Honor. As I sit here today, I don't know how much is outstanding. Some principles have a price. That's right. Federal regulations require us to bring – I'm out of time, Your Honor. I'd be happy to answer that question if you want to hear it, but I'm out of time to address it. That's okay. It was irrelevant. Thank you, Your Honor. All right.